UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ETHEL PARKS,<br><br>    Plaintiff<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Defendant | CASE NO. 1:15-cv-01603-BAM<br><br>ORDER REVERSING AGENCY'S DENIAL OF BENEFITS AND ORDERING REMAND |

    Plaintiff Ethel Parks ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act. The matter is before the Court on the parties' briefs, which were submitted without oral argument to Magistrate Judge Barbara A. McAuliffe.[1] Having carefully considered the parties' briefs, as well as the entire record in this case, the Court finds the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence in the record and is not based upon proper legal standards. Accordingly, the ALJ's decision is REVERSED and the case REMANDED for further proceedings consistent with this Order.

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to conduct all further proceedings in this case before the Honorable Barbara A. McAuliffe, United States Magistrate Judge. (Docs. 8, 10).

## FACTS AND PRIOR PROCEEDINGS

On December 3, 2012, Plaintiff filed her current application for DIB alleging disability beginning January 18, 2012. AR 16, 150-153. Plaintiff's application was denied initially and upon reconsideration. AR 95-99, 101-106. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Following a hearing, ALJ Evangelina Hernandez issued a decision on April 11, 2014 denying benefits. AR 17-26. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 6-9. This appeal followed.

### Background

Plaintiff asserts that she became unable to work due to degenerative disc disease of the lumbar spine, osteoarthritis of the knee, right knee meniscal tear post-surgery, malignant neoplasm of the skin, depression, anxiety and complex regional pain syndrome ("CRPS"), also known as reflex sympathetic dystrophy syndrome ("RSDS" or "RSD"). (Doc. 19 at 3).

### Hearing Testimony

At the March 2014 hearing, Plaintiff testified that she believed she could not work because of severe pain in her lower extremities. AR 34-35. She testified that she had knee pain despite surgery. AR 35. She estimated that, with medication, her pain was 8/10, and that she took medication daily. AR 35. Her pain, she claimed, was unbearable if she did not take medication. AR 36. Plaintiff testified that she woke up with pain of 8 and spent the day between 8 and 10. AR 36. She testified that she took short walks with a cane for around 200 feet before needing to take a 10-minute break. AR 36-37. She said she had occasional swelling but it was usually pain. AR 37. Plaintiff also testified that she experienced low back pain, which was a 5 or 6 out of 10. AR 37.

When asked about her daily activities, Plaintiff testified she could shower by herself. AR 55. She testified that she elevated her leg to hip level when sitting, around 80% of the time. AR 57. Plaintiff testified that she also spent time sitting outside and resting, and playing games on her phone. AR 40. She said she watched some television, but nothing lengthy because of the amount of time she would have to sit. AR 40. Plaintiff testified she could sit for 15 minutes at a time. AR

40-41. Plaintiff estimated she could stand for about 10 minutes at a time. AR 41-42. She testified that she had difficulty sleeping. AR 41. Splitting tasks with her roommate, Plaintiff testified that she did her "portion" of cooking and cleaning, and would prepare simple meals (cereal, a sandwich, something microwaved). AR 41. Plaintiff however does not vacuum. She also testified that she stopped driving because of knee pain, and relied on family and friends for rides. AR 44-45.

When asked about her mental impairments, Plaintiff testified that she experienced anxiety attacks in a crowd or in loud places. AR 38. During such attacks, she experiences shortness of breath, excitability, irritability, intolerance, and impatience, and that the attacks lasted 1 to 4 hours. AR 38. Plaintiff said she experienced a couple of anxiety attacks per week, with more during stressful times, including that she was having one during the hearing. AR 38-39. Plaintiff also experience depression, which she testified had increased because of her physical condition. AR 50. She also testified that she had problems with short-term memory such as forgetting to take pills. AR 43.

When asked about her abilities despite her impairments, Plaintiff testified that could bend at the waist with difficulty, could not kneel, had difficulty using ladders and stairs, and did not do stairs or inclines/declines. AR 48. She said she could use her left but not right foot for foot controls. AR 48. Plaintiff believed she could lift up to 10 pounds. AR 49.

Following Plaintiff's testimony, the ALJ elicited testimony from a vocational expert ("VE"). AR 53-55. In response to a hypothetical posed by the ALJ, the VE testified that an individual of the same age, education and work background as Plaintiff who could do sedentary work, with no right leg foot controls, never climb ladders, ropes, or scaffolds, occasionally climb ramps or stairs, and occasionally balance, stoop, crouch, kneel, or crawl, could not perform Plaintiff's past work as a real estate appraiser but would have transferable skills to semiskilled clerical type jobs such as receptionist and typist. AR 53-55.

**Medical Record**

The entire medical record was reviewed by the Court. AR 222-908. The medical evidence will be referenced below as necessary to this Court's decision.

## THE ALJ'S DECISION

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 16-26. The ALJ found Plaintiff had the following severe impairments: osteoarthritis of the knee, degenerative disc disease, malignant neoplasm of the skin, depression, and anxiety. AR 18. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed impairments individually or in combination.

Based on a review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform a wide range of sedentary work except Plaintiff is precluded from work requiring operation of foot controls with her right lower extremity. Plaintiff is unable to climb ladders, ropes, or scaffolds, but is able to occasionally climb ramps and stairs. She is able to occasionally balance, stoop, kneel, crouch and crawl. Plaintiff must avoid exposure to extreme cold and heat, and avoid all hazardous machinery. She is limited to work requiring only occasional interaction with co-workers and the public. AR 19. The ALJ found that Plaintiff could not perform any past relevant work, but that there were jobs that existed in significant numbers in the national economy that Plaintiff could still perform. AR 24-25. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 25.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the

proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that they are not only unable to do their previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION

**1.    The ALJ failed to Adequately Evaluate Plaintiff's CRPS**

In her brief, Plaintiff contends that the ALJ's decision is unsupported by substantial evidence for two reasons. (Doc. 19). First, Plaintiff argues that the ALJ erred at step two of the sequential process by failing to consider her CRPS/RSD as a "severe" impairment. According to Plaintiff, despite the fact that five physicians diagnosed her with CRPS/RSD or probable RSD, and she was found to have one or more objective signs of CRPS pursuant to SSR 03-2p, the ALJ failed to credit her CRPS as severe. In her second argument, Plaintiff alleges that the ALJ improperly discounted the medical opinion of her treating physician Jonathan Wiens, M.D., in part, due to the ALJ's error at step two. As these arguments are interrelated, the Court addresses them together. The Commissioner responds that: the ALJ did not commit reversible error at step two; and, if so any error was harmless.

**A.    Step Two Legal Standard**

In step two of the five step analysis, the ALJ is required to determine whether a plaintiff

has a "severe" medical impairment or combination of impairments. 20 C.F.R. § 416.920(c). Once those impairments have been ascertained, the ALJ must interpret the functional limitations imposed by the impairments into an RFC assessment. 20 C.F.R. § 416.945; *Palomares v. Astrue*, 887 F.Supp.2d 906, 919 (N.D. Cal. 2012). The RFC is then used to pose hypothetical questions to a vocational expert to determine whether the Plaintiff can perform work that exists in significant numbers in the national economy or past relevant work. *Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014).

A failure to include an impairment in the analysis at step two is only harmful error if the ALJ fails to consider the functional limitations that flow from that impairment at later steps in the sequential evaluation. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("The decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4. As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless"). In creating an RFC, an ALJ need only consider limitations that are supported by objective evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("We will affirm the ALJ's determination of Bayliss's RFC if the ALJ applied the proper legal standard and his decision is supported by substantial evidence. In making his RFC determination, the ALJ took into account those limitations for which there was record support that did not depend on Bayliss's subjective complaints. Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary").

Here, the ALJ found that Plaintiff had the medically determinable severe impairment of "osteoarthritis of the knee;" she did not, however, find that Plaintiff's CRPS—purportedly underlying Plaintiff's knee pain—was a severe impairment. While not explicitly identifying Plaintiff's CRPS as non-severe, the ALJ noted throughout her opinion that Plaintiff's CRPS diagnosis was not supported by objective findings or diagnostic testing. AR 22, 23. The ALJ also credited the opinion of state agency reviewing physician, Dr. David Smith, who opined that Plaintiff's CRPS diagnosis "lacked the necessary criteria." AR 22, 23.

### B. Social Security Guidelines for CRPS pursuant to SSR 03-2p

SSR 03-02p defines CRPS as "a constellation of symptoms and signs that may occur

following an injury to bone or soft tissue" that can arise from a precipitating injury, which is often minor in nature, and cause the individual to suffer from pain exceeding that typically associated with the injury he or she sustained. 2003 WL 22399117. Under the Commissioner's guidelines articulated in SSR 03-02p, CRPS can be established through a claimant's "persistent complaints of pain that are typically out of proportion to the severity of" a documented precipitating injury and at least one of the following clinically documented signs in the affected region of the body at any time following the injury: swelling, autonomic instability (i.e. changes in skin color or texture, decreased or increased sweating, changes in skin temperature, or gooseflesh), abnormal hair or nail growth, osteoporosis, or involuntary movements of the affected region of the initial injury. *Id.*

The evaluation of disability claims involving RSDS/CRPS is particularly difficult, as its pathogenesis is not entirely understood. SSR 03-02p provides that clinically documented signs are often transient and, therefore, "may be present at one examination and not appear at another." *Id.* Consequently, the existence of only transient findings of these signs in the medical record "do[es] not affect a finding that a medically determinable impairment is present." *Id.*

### C. Medical Evidence

The longitudinal record of Plaintiff's knee pain and the resulting CRPS diagnosis is as follows. On April 7, 2010, Plaintiff underwent a right knee meniscectomy performed by Dr. Sanjay Kumar to repair a soft-tissue medial meniscus tear. AR 708, 549. On June 7, 2012, Plaintiff returned to Dr. Kumar with persistent knee pain. AR 294. Other than joint line tenderness, Dr. Kumar could find no clinical reason for her ongoing pain. AR 294-295. Dr. Kumar opined that Plaintiff's right knee continues to be painful and that her pain was "somewhat out of proportion to physical findings." AR 304. Dr. Kumar performed a steroid injection into the knee and did an inflammatory workup. AR 295.

In July and September 2012, Plaintiff sought a second opinion for her knee pain with Dr. Timothy Brox who diagnosed complex regional pain syndrome and osteoarthritis of the knee. AR 315. Dr. Brox referred Plaintiff to pain specialist, Dr. George Wiens. AR 317.

Beginning in October 2012, over several visits, Dr. Wiens diagnosed probable CRPS with minimal swelling and some erythema (reddening of the skin), intermittently. AR 319, 326, 890.

In August 2013, Dr. Wiens sent Plaintiff to Dr. Marta Bator who opined that Plaintiff's symptoms including tenderness and decreased sensation were suggestive of RSD. AR 833. In September 2013, Dr. Wiens again diagnosed CRPS in the leg; status post-surgery; degenerative medial meniscus tear. AR 470. Dr. Wiens noted that although Plaintiff's state disability ran out long ago, Plaintiff was still undergoing "quite extensive treatments." AR 470. On September 25, 2013, Plaintiff underwent regional block sympathetic ganglion to treat her CRPS as suggested by Dr. Wiens. AR 326, 421.

On January 12, 2014, in a medical source statement assessing Plaintiff's limitations based on her CRPS and other impairments, Dr. Wiens found Plaintiff would frequently experience pain that would interfere with her attention and concentration causing Plaintiff to be off task more than 30% of the time and miss five or more days of work a month. AR 892. Dr. Wiens also found Plaintiff could only sit for 4 hours a day, and needed to change position to laying down when pain is present. AR 893. When sitting Plaintiff's legs would need to be elevated horizontally 10 to 30% of the time. AR 893.

**D.    Discussion**

In giving reduced weight to Dr. Wiens' opinion, the ALJ found that it "was inconsistent with the doctor's own findings, […] and is not supported by substantial evidence." AR 24. The ALJ instead credited the opinion of agency reviewing physician Dr. Smith who found that Plaintiff's CRPS diagnosis "lacked the necessary criteria." AR 23, 88. In granting significant weight to Dr. Smith's opinion, the ALJ noted that Dr. Smith "made a careful review of the claimant's treatment history, documenting significant events, and [he] reasonably considered all of the claimant's allegations, as well as the third party submissions." AR 23. Ultimately, the ALJ's decision to reject Dr. Wiens' opinion was likely a result of the ALJ's decision to reject Plaintiff's CRPS.

Nonetheless, as noted by the Commissioner, because the ALJ resolved step two in Plaintiff's favor (finding several other impairments severe) and continued the sequential evaluation, any error in finding Plaintiff's CRPS not severe at step two is only harmful error if the ALJ failed to properly consider the related limitations at later steps of the analysis. *See Burch v.*

*Barnhart*, 400 F.3d 676, 682-84 (9th Cir. 2005). The ALJ is required to consider limitations imposed by all impairments, even those deemed not severe, at the later steps of the sequential evaluation process. SSR 96-8p, 1996 SSR LEXIS 5 at *14, 1996 WL 362207, at *34477 (July 2, 1996). The Court's analysis therefore turns to whether the ALJ properly considered limitations related to Plaintiff's CRPS during Plaintiff's RFC determination.

    **i.**    **The ALJ Improperly Weighed the Medical Evidence When Determining Plaintiff's RFC**

In determining Plaintiff's RFC, the ALJ necessarily weighed the opinions of Plaintiff's treating and non-examining physicians. When evaluating opinions by a treating source, it is well-established that the medical opinion of a treating physician is entitled to special weight. *See* 20 C.F.R. § 404.1527; *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "[G]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(d)(1)-(2).

If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the Administration considers specified factors in determining the weight it will be given. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. *Id*. § 404.1527(c)(2)(i)-(ii).

The opinion of a non-examining physician, like Dr. Smith, may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Such independent reasons may include laboratory test results or contrary reports from examining physicians, and Plaintiff's testimony when it conflicts with the treating physician's opinion. *Lester*, 81 F.3d at 831, *citing Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989).

As discussed above, the ALJ discounted Dr. Wiens' treating opinion that Plaintiff suffered

from CRPS, in large part because Dr. Wiens' conclusions "were inconsistent with the doctor's own findings" and "not supported by substantial evidence." AR 24. Particularly, the ALJ took issue with Dr. Wiens' findings that "Plaintiff would need to lie down or recline for up to six hours." AR 24. The ALJ further found that while Plaintiff may be distracted by her pain symptoms, there was no support in the record for Dr. Wiens' contention that Plaintiff would work at less than 50% efficiency. AR 24. While the ALJ did not state why she specifically rejected Dr. Wiens' CRPS diagnosis, she indicated that "there was little medical evidence of further diagnostic testing or examinations to support" Dr. Wiens' opinion. AR 22. The ALJ further found that Dr. Wiens' inability to find objective causes for Plaintiff's allegations of pain, "with only some minimal swelling and erythema" undermined Dr. Wiens' opinion and Plaintiff's related subjective complaints. AR 21.

The ALJ did not properly evaluate the medical opinions for two reasons. First, while the ALJ was concerned about the lack of diagnostic findings and testing to support the CRPS diagnosis, there is no single diagnostic test for CRPS. Diagnosis is based on the patient's medical history, signs, and symptoms. *Gonzales v. Colvin*, 2014 U.S. Dist. LEXIS 129831, at *10 (C.D. Cal. Sept. 15, 2014) (citing the National Institute of Health's whitepaper on RSD). This is especially problematic because the ALJ discredited Dr. Wiens for failing to rely on evidence that does not exist. Similarly, the fact that diagnostic tests instead revealed largely mild findings like "mild joint line tenderness" and "minimal medial degenerative joint disease" is irrelevant to the question of whether Plaintiff has CRPS. AR 22

In light of the ALJ's insistence on diagnostic testing and objective causes to credit Plaintiff's CRPS, the ALJ failed to recognize the presence of the type of transient findings common to a CRPS diagnosis as outlined in SSR 03-2p. The ALJ did not cite SSR 03-02p, nor is the evaluation of the evidence consistent with the guidelines set forth in that Social Security Ruling. *See Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (noting that Social Security Rulings are binding on the ALJ, and remand may be warranted when an ALJ's decision that does not comport with a Social Security Ruling). Further, what the ALJ characterized as conflicts or inconsistencies in the evidence and therefore an inadequate basis for Dr. Wiens' opinion is

10

contrary to the Commissioner's guidelines stressing that it is not uncommon in CRPS cases to have conflicting evidence in the record "due to the transitory nature of its objective findings and the complicated diagnostic process involved." *SSR 03-02p* at 5.

Second, while the ALJ rejected Plaintiff's CRPS's diagnosis for a lack of objective, diagnostic, or laboratory findings, the medical evidence demonstrating that Plaintiff's signs and symptoms mirrored the "clinically documented signs" outlined in SSR 03-02p, including that Plaintiff's persistent pain began after "a soft-tissue injury" and subsequent "surgery;" her pain was documented as "out of proportion to the relatively normal findings" seen in x-rays and MRI's; and she exhibited attendant signs of "swelling" and changes in skin color. *See* SSR 03-02p; *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (An ALJ may not "ignore competent evidence in the record" in order to justify his conclusion).

Despite the ALJ's acknowledgment that Plaintiff's medical records included findings of redness, tenderness and swelling, which Dr. Wiens cited as evidence supporting his CRPS diagnosis, coupled with a record demonstrating that Plaintiff aggressively sought relief from her persistent knee pain including undergoing a bone scan (AR 232), having multiple MRI's, receiving injections and a sympathetic nerve block (AR 421, 830, 872), and requesting multiple medication changes (AR 323, 840, 842), the ALJ refused to credit this evidence.

Given this evidence, it was error for the ALJ to ignore the RSD/CRPS diagnoses and the objective evidence supporting them in light of SSR 03-02p. As a result, this Court is unable to make any meaningful assessment as to whether the ALJ's rejection of Dr. Wiens' opinion when conducting Plaintiff's Step Four RFC assessment was supported by substantial evidence. The ALJ's failure to give an adequate explanation for discounting Dr. Wiens' recitation of Plaintiff's symptoms and diagnosis of RSD/CRPS, which is both consistent with Plaintiff's testimony and probative evidence that supports Plaintiff's claim, was error. Accordingly, because this error renders the ALJ's decision at step two and step four suspect, this case must be remanded for further proceedings.

As a final matter, the Court does not suggest that Plaintiff is disabled due to her RSDS/CRPS. In fact, further analysis on remand may very well result in the same conclusion: that

Plaintiff may be able to perform some sedentary work despite her impairments. However, SSR 03-2p is very specific and should have been utilized throughout the process of evaluating Plaintiff's claim. The failure to do so was reversible error and was prejudicial at Step Four. For all these reasons, the ALJ's decision must be remanded for further consideration consistent with this decision.[2]

## **CONCLUSION**

Based on the foregoing, this matter is **HEREBY REVERSED** and the case **REMANDED** to the ALJ for further proceedings consistent with this decision. The Clerk of the Court is **DIRECTED** to enter judgment in favor of Plaintiff.

IT IS SO ORDERED.

Dated: __March 7, 2017__          /s/ _Barbara A. McAuliffe_
UNITED STATES MAGISTRATE JUDGE

---

[2] Plaintiff argues that the proper remedy here is a remand for further administrative proceedings to allow the ALJ to fully develop the record and make additional findings. (Doc. 19 at 19). The Court agrees that the record requires further development and will therefore exercise its discretion to dispense with an analysis discussing whether to remand for an immediate award for benefits. 42 U.S.C. § 405(g); *Harman v. Apfel*, 211 F3d 1172, 1178 (9th Cir. 2000).